# LAW OFFICE OF BRIAN L. GREBEN

| | | |
|---|---|---|
| 316 Great Neck Road<br>Great Neck, NY 11021 | **MEMO ENDORSED** | Office: (516) 304-5357<br>Fax: (516) 726-8425 |
| www.grebenlegal.com | | brian@grebenlegal.com |

November 21, 2017

**VIA ECF**
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 21, 2017
```

          Re:    *Fernandes et al. v. City of New York et al.*
                 17 cv 6136 (KPF) (JLC)
                 Fairness Reviews of FLSA/NYLL Settlement

Dear Judge Failla:

      This office represents plaintiffs Alcindo Fernandes, Augustin Puala, Juan Puig and Jose Rodriguez (collectively "plaintiffs") in the above referenced matter. Plaintiffs write jointly with defendants City of New York and Department of Education of The City of New York (collectively, "defendants") in preparing the instant statement explaining the basis for the proposed settlement, including any provision for attorney fees, and why it should be approved as fair and reasonable.

      The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the fully-executed Agreement is attached hereto as Exhibit "A." As such, the parties respectfully request that the Court approve the settlement, pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

## I. Plaintiffs' Allegations

      Plaintiffs allege that they have been continuously employed by defendants as custodians as follows:

- Plaintiff Alcindo Fernandez has worked as a custodian in two schools in the New York City public system: P.S. 81, located at 212 West 120 Street, New York, New York, and P.S. 173, located at 1871 Walton Ave Bronx, Bronx, New York. From July 2011 through December 2016, Mr. Fernandez worked sixty hours for defendants each week between Monday and Fridays.

- Plaintiff Agustin Palau has worked as a custodian in two schools in the New York City public system: Alfred E. Smith Career and Technical Education High School, located at 333 East 151st Street, Bronx, New York, and George

Hon. Katherine Polk Failla
November 21, 2017
-2-

- Washington High School, located at 549 Audubon Avenue at West 192nd Street, New York, New York. From July 2011 through December 2016, Mr. Palau worked sixty hours for defendants each week between Monday and Fridays.

- Plaintiff Juan Puig has worked as a custodian at several New York City public schools, including P.S. 76, located at 900 Adee Avenue, Bronx, New York. From July 2011 through December 2016, Mr. Puig worked seventy hours for defendants each week between Monday and Fridays.

- Plaintiff Jose Rodriguez has worked as a custodian in two schools in the New York City public system: P.S. 21, located at 715 East 225 Street, Bronx, New York, and P.S. 36, located at 1070 Castle Hill Avenue, Bronx, New York. From July 2011 through December 2016, Mr. Rodriguez worked seventy hours for defendants each week between Monday and Fridays.

Plaintiffs further allege that their employment and hours were typical of custodians.

In April 2016, a non-profit corporation, New York City School Support Services, Inc. ("NYCSSS") was established. Plaintiffs allege that NYCSSS took over the direct management of school custodians' payroll on or about August 12, 2016, and from that point forward, they began receiving overtime at a premium rate of 1.5 times their regular hourly rate for all hours worked over 40 hours per week. Plaintiffs further allege that prior to the NYCSSS' takeover, defendants did not pay them overtime at a rate of 1.5 times their regular hourly rate for weekday hours worked in excess of forty (40) hours per work week, as defendants were required to do under the FLSA and the NYLL.

**II. Procedural History**

On August 14, 2017, plaintiffs, on behalf of themselves and others similarly situated, filed a Complaint against defendants alleging claims for unpaid overtime wages and liquidated damages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Minimum Wage Act, N.Y. Lab. Law § 650 et seq. ("NYLL"). Plaintiffs also sought a class representative fee, attorneys' fees, costs and interest.

In early September, the parties' attorneys contacted one another and began settlement negotiations. Thereafter, the parties exchanged documents to facilitate settlement, including records of wages paid to and hours worked by plaintiff. Plaintiffs used these records to create spreadsheets illustrating alleged underpayments and other damages.

In May 2017, defendants settled a similar lawsuit in mediation. That action, *Miller III v. City of New York et al.*, 17 cv 30 (GBD) (DCF), also involved school custodians alleging that they were insufficiently paid overtime prior to August 12, 2016. Hon. Judge George B. Daniels So-Ordered the *Miller* settlement on June 2, 2017. The instant settlement was largely based on terms of the *Miller* settlement.

On November 9, 2017, defendants' counsel advised the Court that the parties had reached an agreement in principal and were drafting settlement documents. On November 9, 2017, the Court stayed the deadlines pending in the instant action in anticipation of the submission of settlement documents.

Hon. Katherine Polk Failla
November 21, 2017
-3-

### III. Settlement Terms

The parties have agreed to settle this action in its entirety using records provided by defendants showing the exact dates plaintiffs worked, and exactly how much each were paid. Based on these documents, parties agreed to settle this matter in its entirety for the the payment of the following by defendants:

- Alcindo Fernandes:
    a. back pay in the total amount of twenty-eight thousand dollars and no cents ($28,000.00); and
    b. liquidated damages in the total amount of thirty-three thousand dollars and no cents ($33,000.00.

- Agustin Palau:
    a. back pay in the total amount of thirty-seven thousand dollars and no cents ($37,000.00); and
    b. liquidated damages in the total amount of forty-two thousand dollars and no cents ($42,000.00).

- Juan Puig:
    a. back pay in the total amount of forty thousand dollars and no cents ($40,000.00); and
    b. liquidated damages in the total amount of forty-five thousand dollars and no cents ($45,000.00).

- Jose Rodriguez:
    a. back pay in the total amount of thirty thousand dollars and no cents ($30,000.00); and
    b. liquidated damages in the total amount of thirty-five thousand dollars and no cents ($35,000.00); and

- The City of New York further agrees to pay sixty thousand, four hundred and forty dollars and no cents ($60,440.00) for costs, disbursements and attorney's fees ("Attorney's Fees").

As noted above, for the Court's convenience a copy of the Agreement is annexed hereto as Exhibit "A."

### IV. Applicable Factors for Approving FLSA Settlements

The Second Circuit requires that settlement agreements in Fair Labor Standards Act (FLSA) cases obtain court or Department of Labor approval. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Hon. Katherine Polk Failla
November 21, 2017
-4-

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

> (1) the plaintiffs' range of possible recovery;
>
> (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
>
> (3) the seriousness of the litigation risks faced by the parties;
>
> (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
>
> (5) the possibility of fraud or collusion.

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted).

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See, e.g.*, *Sanz v. Johnny Utah 51 LLC*, 2015 U.S. Dist. LEXIS 51683 (S.D.N.Y. April 15, 2015) (JMF); *Diaz v. Scores Holding Co., Inc.*, No. 07-CV-8718 (THK), 2011 U.S. Dist. LEXIS 112187 at *3-4 (S.D.N.Y. July 11, 2011).

**V. Application of FLSA Factors to the Proposed Settlement**

As discussed above, the parties believe that the proposed settlement terms in this case are fair and reasonable to plaintiffs and defendants. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding whether plaintiffs have complied with all conditions precedent to bringing a NYLL claim, whether an award of liquidated damages is appropriate, and whether a two or three-year statute of limitations would apply to plaintiffs' FLSA claims. Defendants' defenses regarding the City being an improper party and that to the extent there were FLSA violations, if any, they were not willful and were in good faith, were asserted and considered in the settlement negotiations. Plaintiffs' counsel shared his calculations of the damages under plaintiffs' theories and the parties used this information to negotiate a fair settlement. This compromise was reached after arms-length negotiations between the parties.

As to the range of recovery, plaintiffs consider this to be a fair settlement because it exceeds their estimates of the compensatory and liquidated damages for the portion of their claims occurring within the FLSA statute of limitations.  This is particularly significant because defendants have indicated that if a settlement is not achieved, they will move to dismiss plaintiffs' claims stemming from events that occurred prior to the limit of the three-year FLSA statute of limitations.  If defendants' contemplated motion to dismiss were granted, plaintiffs' NYLL claims would be dismissed, and their recovery would be limited to the three-year FLSA statute of limitations – an amount that is less than the amount of the settlement described herein.

On the other hand, if defendants' anticipated motion to dismiss were to be denied as to plaintiffs' NYLL claims, defendants would risk doubling the applicable statute of limitations from a maximum of three years under the FLSA to six years under the NYLL. These facts, coupled with: a) the early stage of litigation; and b) the relatively swift payout to plaintiffs (as opposed to a speculative payment after years of litigation in the District Court) weigh in favor of settlement.

With respect to avoiding anticipated burdens and expenses, litigating FLSA damages can be and would be a fact-intensive process demanding in-depth and costly investigation by all parties. Without this settlement, the parties would need to spend significant amounts of time, money and expense to undertake lengthy discovery. Furthermore, with respect to the third factor, as noted above, there is no guarantee of success on either side. Given the uncertainty over the potential outcome, the parties were motivated to settle this dispute. With respect to the fourth factor, the parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for the parties, armed with instructions from their clients, discussed settlement terms until a tentative settlement was reached. The fact that the settlement was negotiated at arms' length, compels the conclusion that the proposed settlement is fair and should be approved. *Chapman-Green v. Icahn House West. LLC*, 2013 U.S. Dist. LEXIS 25671 (S.D.N.Y. 2013) ("[T]he surrender of the possibility of liquidated damages gives plaintiff immediate relief and avoids the risk, which is not insubstantial, of a potential loss or a much smaller recovery."); *Johnson v. Brennan*, 2011 WL 4357376, *12 (S.D.N.Y. 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). This is particularly so in light of the fact that the settlement is the result of hard fought negotiations between counsel. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, 2-3 (S.D.N.Y. 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."); *Hernandez v. C-Penn Foods Inc.,* 2011 U.S. Dist. LEXIS 144798 (S.D.N.Y. 2011) ("[G]iven the disputed issues of fact relating to plaintiff' wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable."). Finally, given the parties' arms-length negotiating, the parties believe that there was no opportunity for and no possibility of fraud or collusion. The parties represented their clients zealously and obtained what the parties consider to be an appropriate settlement.

## VI. Attorney's Fees and Costs

Plaintiffs' retainer agreement with their counsel specifies that plaintiffs' counsel's fee will be one third of the plaintiffs' recovery, plus fees and costs. It is a standard, common arrangement for plaintiffs' attorneys, and is considered "fair and reasonable using a 'percentage-of-recovery' method of calculation, consistent with 'the trend in this Circuit.'" *Hens v. Clientlogic Operating Corp.*, 2010 WL 5490833, at *2 (W.D.N.Y. 2010) (quoting *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). To be sure, the percentage of fees contemplated by the retainer agreements are well within the range of fees typically awarded in common fund cases in this Circuit. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007) (holding that private retainer agreement granting attorneys one third of total damages was valid because it reflected what reasonable

clients would pay); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Chambery v. Tuxedo Junction Inc.*, 2014 U.S. Dist. LEXIS 101939, **22-23 (W.D.N.Y. 2014); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiffs' retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs.  This fee arrangement is routinely approved by courts in this Circuit."); *Khait v. Whirlpool Corp.,* 2010 WL 2025106, *8 (E.D.N.Y. 2010) (33% of settlement or $3,052,500 in FLSA and NYLL case); *Hens*, *supra* 2010 WL 5490833, at *2; *Stefaniak v. HSBC Bank USA, N.A.,* 2008 WL 7630102, *3 (W.D.N.Y. 2008) (33% of $2.9 million fund in FLSA and NYLL case)) (other citations omitted).

Plaintiffs' combined recovery under the instant settlement is $290,000, and one third of that is $96,657.  After defendants' $60,440 attorney fee/cost contribution, plaintiffs' remaining attorney fees amount to $36,217.  However, in the interest of facilitating a relatively quick settlement, plaintiffs' counsel will limit plaintiffs' fee contribution to $15,000, allocated between the four plaintiffs based each's percentage of the entire recovery.[1]  This works out as follows:

- Fernandes - $3,155
- Puala -- $4,086
- Puig -- $4,397
- Rodriguez -- $3,362

For all the above reasons, the parties believe that this proposed settlement is fair and reasonable and therefore the parties respectfully request that the Court So Order the Stipulation of Settlement that is appended to the Agreement as Exhibit "A."  The parties thank the Court for its attention to this matter.

Very truly yours,

Brian L. Greben

Encls.

cc:    Andrea O'Connor

---

[1] Plaintiffs' counsel will waive the remaining $21,217 in attorneys' fees.

The Court is in receipt of the parties' proposed settlement. The Court has reviewed the proposal in light of *Cheeks* v. *Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lopez* v. *Nights of Cabiria*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky* v. *Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair.

While the Court finds that the attorneys' fees provided for in Paragraph 2(e) of the Settlement Agreement are reasonable, the Court does not make any finding as to the reasonableness of counsel's hourly rates.

The parties are directed to submit an executed stipulation of dismissal by November 27, 2017.

Dated: November 21, 2017        SO ORDERED.
       New York, New York

                                 *[signature: Katherine Polk Failla]*

                                 HON. KATHERINE POLK FAILLA
                                 UNITED STATES DISTRICT JUDGE